UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

DANIEL EUGENE HANCOCK,

      Plaintiff,

    v.                              Case No:   6:15-cv-206-Orl-DNF

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

## OPINION AND ORDER

Plaintiff, Daniel Eugene Hancock, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for a period of disability and disability insurance benefits ("DIB").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.   Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision

### A.  Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382a(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do his previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B.  Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).  However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments.  *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii).  If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled.  20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii).  If he meets this burden, he will be considered disabled without consideration of age, education and work experience.  *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work.  *Id.* At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work.  20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f).  If the claimant can still perform his past relevant work, then he will not be found disabled.  *Id.*

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience.  *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant.  *Allen v. Sullivan*, 880 F.2d 1200,

1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

### C. Procedural History

Plaintiff filed an application for a period of disability and DIB on November 7, 2011, alleging disability beginning March 18, 2009. (Tr. 186-87). He later amended his onset date to the date of his second car accident, March 8, 2010. (Tr. 206). Plaintiff's application was denied initially on January 17, 2012, and upon reconsideration on March 21, 2012. (Tr. 129-33, 136-40). At Plaintiff's request, an administrative hearing was held before Administrative Law Judge Ken Terry (the "ALJ") on April 9, 2013. (Tr. 31-100). On June 7, 2013, the ALJ entered a decision finding that Plaintiff was not under a disability at any time from March 8, 2010, through his date last insured of March 31, 2013. (Tr. 11-30). Plaintiff appealed the ALJ's decision and the Appeals Council denied Plaintiff's request for review on December 12, 2014. (Tr. 1-5). Plaintiff initiated the instant action by filing a Complaint (Doc. 1) on February 11, 2015. The parties having filed a joint memorandum setting forth their respective positions, this case is ripe for review.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity from his alleged onset date of March 8, 2010, through his date last insured of March 31, 2013. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, with evidence of

bulging and/or disc herniation and possible borderline intellectual functioning.  (Tr. 13).  At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 13).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "perform a significant range of light work as defined in 20 CFR 404.1567(b)." (Tr. 18).  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. 24).  At step five, the ALJ relied on the testimony of a VE to find that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (Tr. 25).  Specifically, the ALJ found that Plaintiff could perform the jobs of power screw driver operator, cleaner and polisher, and housekeeping cleaner.  (Tr. 25).  The ALJ concluded that Plaintiff has not been under a disability from March 8, 2010, the alleged onset date, through March 31, 2013, Plaintiff's date last insured.  (Tr. 26).

## II.      Analysis

Plaintiff raises five issues on appeal: (1) whether the ALJ erred when he failed to rule on Plaintiff's post hearing objection related to the reliability of the VE's testimony; (2) whether the ALJ erred when he relied upon VE testimony inconsistent with his step 5 conclusion that there were other jobs Plaintiff could perform given his RFC finding; (3) whether the ALJ's finding that Plaintiff's impairments did not meet or equal Listing 12.05C was legally erroneous and/or not supported by substantial evidence; (4) whether the ALJ erred by failing to evaluate whether Plaintiff's spinal condition met Listing 1.04A; and (5) whether the ALJ's RFC that contained no mental limitations is supported by substantial evidence.  The Court will address each issue in turn.

**(a) Whether the ALJ erred when he failed to rule on Plaintiff's post hearing objection related to the reliability of the VE's testimony.**

After the administrative hearing, Plaintiff submitted a memorandum to the ALJ raising several objections related to the VE's testimony, including her testimony about job incidence data and on whether Plaintiff could meet the demands of the positions identified in response to the ALJ's hypothetical question. (Tr. 271, 272-75). Plaintiff contends that the ALJ's failure to rule upon these objections is clear error requiring remand because they bear directly on the reliability of the VE's testimony. (Doc. 23 p. 12). Specifically, Plaintiff contends that the ALJ erred by relying on the VE's testimony as the VE relied upon a commercial software product, SkillTRAN, to arrive at job incidence data, despite her admitted ignorance of the statistical methodology applied by SkillTRAN to produce the requested information. (Doc. 23 p. 12).

In response, Defendant contends that the ALJ properly relied on the VE's testimony to find that a significant number of jobs existed in the national economy that Plaintiff could perform. (Doc. 23 p. 13). Defendant contends that Plaintiff's argument is without merit and to find otherwise would mean there would be no effective means of ascertaining whether a claimant could perform other work existing in significant numbers in the economy and would unleash a torrent of similar claims. (Doc. 23 p. 13). Defendant argues that courts have upheld the use of software, including SkillTRAN, where it was one of several resources utilized by the VE in making an assessment. (Doc. 23 p. 14).

Here, the Court finds Plaintiff's argument well founded. While Defendant cites to numerous cases in which courts have upheld the use of software such as SkillTRAN, the courts did so only where the software was one of several resources utilized by the VE in making an assessment. For example, in the case *Drossman v. Astrue*, 2011 WL 4496561, at *6 (N.D. Ohio Sept. 27, 2011), the court noted that the "VE did not rely solely on the Job Browser Pro software

but also consulted with other vocational experts and sources of data used by other vocational experts." Likewise, in *Poisson v. Astrue*, 2012 WL 1067661, at *9 (D. Me. Mar. 28, 2012), the court remarked that "[w]hile the vocational expert may not have known, in precise technical detail, how the Job Browser Pro system worked, she explained why she thought that the underlying data was reliable and endorsed the numbers derived therefrom as accurate."

In this case, unlike in *Drossman*, the VE did not consult with other vocational experts and other sources of data used by vocational experts to determine job incidence data. Unlike in *Poisson*, the VE did not explain why the underlying data was reliable, instead offering only that usage of the software is "an acceptable source on both sides normally" and that software is used in worker's compensation figures. (Tr. 98-99). When a plaintiff challenges the VE's reliance on the software, the Court finds it insufficient to rely on the software solely because the VE states it is normally an acceptable source and used in worker's compensation figures.

Defendant contends that the VE's testimony should be upheld because she "affirmed her testimony was based upon her 30+ years of experience as a vocational rehabilitation specialist." (Doc. 23 p. 15). Thus, Defendant argues, the VE's testimony was not based solely on the jobs software, but also on her own experience, and the ALJ was correct to have relied on the VE's testimony. The Court rejects this argument. The transcript makes clear that the VE's reference to her "30-plus years as a vocational rehabilitation specialist" related to her testimony concerning whether the job of power screwdriver ever exceeded the physical or mental requirements identified by the ALJ, and not in reference to job incidence data. (Tr. 95). In reference to job numbers, the VE testified that she was using SkillTRAN and made no reference to her years of experience. (Tr. 98). Thus, the Court is unpersuaded by Defendant's suggestion that the VE's testimony as to jobs numbers was not based solely on SkillTRAN, but also independently upon her years of experience.

The VE's reliance on SkillTRAN without any testimony or evidence that she could endorse those numbers based on her knowledge and expertise rendered her testimony unreliable.  *See Thompson v. Comm'r of Soc. Sec.*, 2016 WL 1008444, at *6 (Mar. 15, 2016).  Accordingly, the Court finds it appropriate to remand this case for the ALJ to properly consider evidence regarding the number of jobs the Plaintiff could perform.

> **(b) Whether the ALJ erred when he relied upon VE testimony inconsistent with his step 5 conclusion that there were other jobs Plaintiff could perform given his RFC finding.**

Plaintiff argues that the ALJ erred in relying on the VE's testimony that Plaintiff could perform the work of power screw driver operator, housekeeper polisher, and housekeeper cleaner, because the VE's testimony was equivocal as to whether these jobs would require tasks requiring greater exertion than that identified in the ALJ's RFC finding.  (Doc. 23 p. 17).  Defendant responds that while the VE did not initially testify that on some days the demands of the work could be greater than identified in the RFC hypothetical, the VE subsequently indicated that she did not understand the question.  (Doc. 23 p. 18).  Defendant argues that the VE then clarified her testimony by stating that although there could be variability in how jobs are performed on a day-to-day basis, such variance was "not over and above" the hypothetical RFC posed by the ALJ. (Doc. 23 p. 19 citing Tr. 94).

The transcript of the administrative hearing reveals the VE conceded that there would be occasions when a worker performing these jobs would be required to perform tasks requiring greater exertion than that identified in the ALJ's RFC finding.  (Tr. 92).  After the ALJ intervened to clarify that the VE "shouldn't give me any jobs which exceed the RFC I gave her" the VE responded, "That's true" and indicated that there could be variability in how jobs are performed on a day-to-day basis, but that such variance was "not over and above" the hypothetical RFC posed

by the ALJ.  (Tr. 94).  However, when asked again if on any given day the mental and physical requirements of the power screw driver job would exceed the ALJ's hypothetical, the VE testified "that is being God.  I could not say that."  (Tr. 95).  When subsequently asked whether the same was true of the other two positions identified, the VE responded, "jobs vary but I've given you jobs that, more likely than not . . . will not exceed the definition of light." (Tr. 95).

Here, the VE's testimony is equivocal as to whether an individual with Plaintiff's RFC is capable of performing the jobs of power screw driver operator, housekeeper polisher, and housekeeper cleaner.  For this reason, the Court will require the ALJ, upon remand, to determine whether Plaintiff can perform these jobs or any others given his RFC.

**(c) Whether the ALJ's finding that Plaintiff's impairments did not meet or equal Listing 12.05C was legally erroneous and/or not supported by substantial evidence.**

At the time of the ALJ's decision on June 7, 2013, Listing 12.05 stated in relevant part:

> *Mental retardation*:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation on function [.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05 (2012).  The introductory material to the mental disorders listing clarified Listing 12.05, stating:

> The structure of the listing for mental retardation (12.05) is different from that of the other mental disorder listings.  Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation.  It also contains four sets of criteria (paragraphs A through D).

> If you impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, [the Commissioner] will find that your impairment meets the listing.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00A (2012).  Therefore, a claimant must show that his impairments meet all of the criteria listed both in the introductory paragraph of Listing 12.05C and in subsection C.  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00A, 12.05 (2012).  Thus, to be considered for disability benefits under section 12.05, a claimant must (1) have a valid verbal, performance, or full scale IQ of 60 through 70; (2) a significant work-related limitation on function; and (3) deficits in adaptive behavior which manifested before age 22.

Plaintiff argues that the ALJ erred by failing to find that Plaintiff met the requirements for Listing 12.05C.  Plaintiff contends that his valid IQ scores satisfy the "first prong" and the ALJ's finding that Plaintiff has degenerative disc disease of the cervical and lumbar spine meets the "second prong," and that the evidence of record establishes that Plaintiff has deficits of adaptive functioning of some degree.  (Doc. 23 p. 20-26).

In response, Defendant does not contest that Plaintiff meets the first two prongs of 12.05C, i.e., having an IQ 60 through 70 and a significant work-related limitation on functioning.  Instead, Defendant contends that Plaintiff has failed to show that Plaintiff had deficits in adaptive functioning. (Doc. 23 p. 29).  Thus, the issue the Court must determine is whether the ALJ erred by finding that Plaintiff did not have any deficits in adaptive functioning.

The regulations state that "adaptive activities" include activities of daily living such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, and caring for personal needs. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C(1).  The Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) further explains that, "Adaptive functioning refers to how effectively individuals cope with common life demands and how well they meet the

standards of personal independence expected of someone of their particular age group, sociocultural background, and community setting." American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 42 (4th ed. Text Rev. 2000).

The claimant has the burden of proving that his or her impairments meet or equal a listed impairment and must present specific evidence of medical signs, symptoms, or laboratory test results meeting all of the specified medical criteria. *Sullivan v. Zebley,* 493 U.S. 521, 530, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990); *Wilkinson v. Bowen,* 847 F.2d 660, 662 (11th Cir.1987). "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan,* 493 U.S. at 530.

In this case, the Court finds that the ALJ did not err in determining that Plaintiff did not have significant deficits in adaptive functioning.  In his opinion, the ALJ cited the opinion of examining medical consultant Dr. Vilar who observed no deficits in regards to adaptive functioning.  (Tr. 17, 382).  The evidence of record shows that Plaintiff had a driver's license and drove (Tr. 39, 212, 223, 378); he was able to use public transportation (Tr. 41); care for his personal needs (Tr. 210, 221); cook simple meals (Tr. 211, 222); perform household chores (Tr. 69, 75, 211, 222); check the mail (Tr. 74); and shop (Tr. 212, 223, 233).  Further, the record shows that Plaintiff could count change, do simple math calculations, and fill out a disability paperwork and job applications.  (Tr. 210, 212, 213, 223, 380).  Plaintiff socializes with family and friends (Tr. 213, 224) and attended church (Tr. 76).  Plaintiff reported that he was able to follow written instructions if someone explained them to him or there were pictures and he could follow spoken instructions even better.  (Tr. 214, 226).

The Court is unpersuaded by Plaintiff's contention that the ALJ erred by relying on Dr. Vilar's finding that Plaintiff had "no deficits in regards to adaptive functioning" since this statement was expressed with respect to a diagnosis of mental retardation, and not as to whether Plaintiff met a listing.  (Doc. 23 p. 22).  The substantial evidence of record supports the ALJ's finding that Plaintiff had no deficits in adaptive functioning.  The burden was on Plaintiff to demonstrate that his condition meets a listed impairment.  Plaintiff failed to show that he meets Listing 12.05C.  Accordingly, the Court finds no error in the ALJ's analysis as to whether Plaintiff met Listing 12.05C.

**(d) Whether the ALJ erred by failing to evaluate whether Plaintiff's spinal condition met Listing 1.04A**

Listing 1.04A provides, in relevant part, the following:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord.  With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.04.

Plaintiff argues that the ALJ erred by failing to even consider whether Plaintiff met Listing 1.04A.  (Doc. 23 p. 32).  Plaintiff contends that the record raises the reasonable possibility that Plaintiff meets Listing 1.04A and the ALJ should have explained his reasoning in ignoring the issue of whether Plaintiff met the listing.  (Doc. 23 p. 33).  In response, Defendant argues that Plaintiff falls short of showing that Plaintiff meets all of the requirements for Listing 1.04A.

In this case, the Court finds that Plaintiff has failed to show that the ALJ erred by failing to consider whether Plaintiff met Listing 1.04A.  As Defendant notes, as to meeting the Listing for his lumbar spine disorder, there is no indication Plaintiff has positive straight leg raising tests in the sitting *and* standing supine positions as required by the regulation.  (Tr. 295, 376, 386, 389).  As to Plaintiff's cervical spine disorder, imaging studies show no evidence of nerve root compression.  (Tr. 357-58, 453-54).  The record shows no evidence of atrophy of any muscle, showing instead that Plaintiff was found to have normal muscle bulk, tone, and strength on several occasions.  (Tr. 295, 376, 389).  The record shows only intermittent abnormal findings as to Plaintiff's spine's range of motion, sensation and reflexes.  For example, the record shows several occasions where Plaintiff had full range of motion of the lumbar spine (Tr. 376, 384, 389) and cervical spine (Tr. 376).  Plaintiff had no sensory deficits (Tr. 281, 314, 330, 343) and normal reflexes on several occasions (Tr. 330, 343, 376, 389, 409).

While Plaintiff is correct that the ALJ did not specifically address whether Plaintiff met or equaled Listing 1.04A, the Court does not find it appropriate to remand this case for him to do so.  The Commissioner's regulations do not require the ALJ to discuss all listings that could be applicable.  *See Turberville v. Astrue*, 316 F. App'x 891, 893 (11th Cir. 2009) (per curiam) ("though the ALJ did not explicitly discuss why [claimant did not meet the Listings] substantial record evidence supports [that claimant did not meet the Listing]".)  Plaintiff has failed to carry his burden of establishing that his spinal impairment met or equaled Listing 1.04A.  Thus, the Court finds that the ALJ did not err by failing to find Plaintiff met Listing 1.04A.

**(e) Whether the ALJ's RFC that contained no mental limitations is supported by substantial evidence.**

Plaintiff argues that the record plainly demonstrates that Plaintiff had actual mental limitations on his ability to perform basic work activities and that the ALJ committed clear error

by failing to assign any mental work-related limitation in his RFC finding. (Doc. 23 p. 37). Plaintiff contends that the ALJ improperly assigned "little weight" to the opinions of SSA nonexamining psychological experts Dr. Adrine McKenzie and Dr. Julie Bruno who each found Plaintiff had mental limitations. (Doc. 23 p. 38-41). Further, Plaintiff contends that the ALJ erred when he failed to account for his step two finding that Plaintiff had moderate limitations in concentration, persistence and pace, in his RFC finding. (Doc. 23 p. 42).

In response, Defendant contends that the hypothetical question posed to the VE at the administrative hearing accurately accounted for Plaintiff's mental limitations. (Doc. 23 p. 44). Thus, Defendant argues, any error the ALJ may have committed by including no mental limitations in his RFC assessment is harmless error. (Doc. 23 p. 48). Further, Defendant argues that the mental limitations contained in the hypothetical question were supported by substantial evidence. (Doc. 23 p. 44-50).

The record shows that the hypothetical question posed to the VE specified an individual incapable of detailed or complex tasks "but capable of simple, routine tasks consistent with unskilled work with concentration on those tasks for two-hour periods with normal breaks and a lunch." (Tr. 89). The VE testified that a person with these limitations could perform the jobs of power screwdriver operator, cleaner and polisher, and housekeeping cleaner. (Tr. 89-91). The Court finds that the mental limitations included in the hypothetical adequately accounted for Plaintiff's mental limitations. Accordingly, the Court agrees with Defendant that any error the ALJ may have committed by failing to find that Plaintiff had mental limitations in the RFC assessment was harmless given the fact that the hypothetical question posed to the VE adequately accounted for Plaintiff's mental limitations.

In *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180, the Eleventh Circuit explained "that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." 631 F.3d at 1180. If, however, the medical evidence demonstrates that a claimant's ability to work is unaffected by the limitation or the limitation is implicitly accounted for in the hypothetical, remand is inappropriate. *Winschel*, 631 F.3d at 1181. In other words, "[a]n ALJ's hypothetical question restricting the claimant to simple and routine tasks adequately accounts for restrictions related to concentration, persistence, and pace where the medical evidence demonstrates that the claimant retains the ability to perform the tasks despite limitations in concentration, persistence, and pace." *Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907 (11th Cir. 2013).

In posing the hypothetical question to the VE, the ALJ gave some weight to the examination performed by examining psychological consultant Joanna Vilar, Psy.D. (Tr. 22-23, 379-82). Dr. Vilar's examination revealed Plaintiff had adequate recall suggesting no severe memory impairments; no evidence suggesting deficits in attention or concentration; the ability to understand all tasks with no elaboration or instructions required, and the ability to complete simple math calculations in addition and subtraction. (Tr. 22-23, 380). The ALJ incorporated these findings when he limited the hypothetical question to work involving simple, routine tasks consistent with unskilled work.

Further supporting the ALJ's hypothetical is the opinion of Dr. McKenzie. Dr. McKenzie found that Plaintiff was not significantly limited in the ability to understand, remember, and carry out very short and simple instructions and was only moderately limited in his ability to maintain attention and concentration for extended periods. (Tr. 109). While Dr. McKenzie found that Plaintiff had moderate limitations in the area of social functioning, the ALJ explained that he

accorded only "little weight" to this finding given that Plaintiff "has a healthy social life, communicates regularly with friends and has been able to live with a roommate/girlfriend without any reported conflict." (Tr. 23).  As a nonexamining physician, Dr. McKenzie's opinion was not entitled to any special deference and the ALJ explained his reasoning for rejecting Dr. McKenzie's opinion as to Plaintiff's social functioning.  *See Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1271-72 (M.D. Fla. 2012).

Likewise, as Dr. Bruno was a nonexamining physician, her opinion was entitled to no special deference.  The ALJ explained that he accorded "little weight" to Dr. Bruno's finding that Plaintiff had marked limitation in concentration, persistence and pace because Plaintiff "has been able to work [throughout] his life and there is no evidence that his mental condition has worsened since he last worked."  (Tr. 23).

The ALJ adequately accounted for Plaintiff's mental limitations in the hypothetical question posed to the VE.  The VE testified that an individual with such mental limitations would be able to work the jobs identified the jobs of power screwdriver operator, cleaner and polisher, and housekeeping cleaner, i.e. the same jobs the ALJ found Plaintiff could perform at step five of the sequential evaluation process.  Therefore, the Court finds that any error the ALJ committed by finding that Plaintiff had no mental limitations is harmless.

### III.     Conclusion

The decision of the Commissioner is **REVERSED AND REMANDED**.  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 16, 2016.

DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties